2013 OK CIV APP 71

CHOICES INSTITUTE, INC., Plaintiff/Appellee,

v.

OKLAHOMA HEALTH CARE AUTHORITY and Mike Fogarty, in his capacity as Chief Executive Officer of the Oklahoma Health Care Authority, Defendants/Appellants.

No. 109798.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 23, 2013.

Rehearing Denied July 3, 2013.

Howard J. Pallotta, Oklahoma City, Oklahoma, for Appellants.

Tom Q. Ferguson, Jon E. Brightmire, James R. Bullard, Tulsa, Oklahoma, for Appellee.

LARRY JOPLIN, Chief–Judge.

¶ 1 This is an appeal by the Oklahoma Health Care Authority (OHCA) from an order of the district court dismissing with prejudice the April 30, 2009 OHCA decision, wherein OHCA found Choices Institute, Inc. (Choices or Choices Institute) received Medicaid overpayments in the amount of $53,666. Choices Institute appealed the OHCA overpayment finding to the district court, arguing the institute had been deprived of due process without a proper hearing to protect its interests in the funds it had already been paid. Choices Institute also argued the record did not support the finding of overpayment and the OHCA had failed to act in a timely manner, because the decision from the Medical Advisory Committee (MAC) was not made for over six months, in excess of the time allowed under the applicable administrative regulation. *See* O.A.C. § 317:2–1–7(6) (2006).

¶ 2 The district court found the final agency order, issued by the Chief Executive Officer of the OHCA (Michael Fogarty), implicated a property interest of Choices Institute, so that Choices had a right to due process prior to the funds being taken from it. The court found that Choices was not permitted in the course of the agency's process to fully defend and/or present its position regarding the money Choices claimed to have earned as a Medicaid provider. The court also found the agency failed to follow decision deadlines imposed in the agency regulations. Finally, the court reversed the April 30, 2009 decision of the OHCA and instructed OHCA to refund the money taken from Choices, and the court dismissed all proceedings with prejudice.

¶ 3 The Oklahoma Administrative Procedures Act, 75 O.S.2001 § 250 et seq. (OAPA), governs district court review of decisions of the Oklahoma Health Care Authority. 63 O.S.2001 § 5052(D); *Choices Institute v. Oklahoma Health Care Authority,* 2010 OK CIV APP 117, 241 P.3d 705; *Pharmcare Oklahoma, Inc. v. State Health Care Authority,* 2007 OK CIV APP 5, 152 P.3d 267. Except in circumstances not present here, judicial review is confined to the record made before the administrative tribunal. 75 O.S. § 321; *City of Tulsa v. Public Employees Relations Board,* 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219. "Generally, an administrative decision like that here should be affirmed if it is a valid order and the administrative proceedings are free from prejudicial error to the appealing party." *City of Tulsa,* 1998 OK 92, ¶ 12, 967 P.2d at 1219; 75 O.S. § 322(1). However, an administrative order is subject to modification or reversal if:

[T]he substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, . . . , including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

75 O.S. § 322(1)(a-f). On appeal from the district court's review, the appellate courts apply the same standards of review to the administrative record. 75 O.S. § 322(1);

*City of Tulsa,* 1998 OK 92, ¶ 12, 967 P.2d at 1219.

¶ 4 This case began when the OHCA's Surveillance, Utilization and Review System (SURS) conducted an unannounced audit of payments made to Choices Institute in March 2007. SURS audited claims and payments made to Choices from August 1, 2005 to October 31, 2006. During the audit time period, Choices had 12,232 claims. In the course of the audit, SURS initially found Choices had a claims error rate of 45.4% for the 136 claims it reviewed. The OHCA then extrapolated that error rate over the entire number of claims paid during the audit period and determined Choices had been overpaid in Medicaid payments, necessitating a refund from Choices in the amount of $174,911.

¶ 5 Over the course of the next eleven months, Choices Institute requested reconsideration of the error determinations, the error rate and the corresponding overpayment determination. Choices was successful to a great extent, because after submitting considerable additional documentation, OHCA revised the error rate several times. By April 2008, OHCA had reduced Choices error rate to 25.2%, with a corresponding overpayment determination of $84,629.

¶ 6 Choices timely appealed the SURS decision to the Medical Advisory Committee (MAC) in April 2008. Although Choices representatives and counsel were available on the day the hearing was held (September 18, 2008), Choices personnel were not permitted to attend the MAC hearing. One reason given for excluding Choices participation was an OHCA practice to avoid identifying the provider before the MAC. Choices also complained it was unable to present evidence, witnesses, or have its attorney argue on its behalf.

¶ 7 The State Medicaid Director issued the MAC decision by letter on March 31, 2009. The Medicaid Director outlined seven specific issues that were addressed in the MAC appeal including: a) billed services for a behavioral health specialist whose qualifications were insufficient at the time services were rendered; b) failure to have a guardian's signature on the mental health service plan of a minor; c) failure to document the medical record for billed services; d) staff/patient ratio for psychological rehabilitation services exceeded the minimum staffing ratio required for the number of patients billed; e) group counseling sessions exceeded the maximum number permitted in the counseling group; f) claims included multiple billing entries with overlapping time entries for the same patient; and g) service providers failed to adequately document signature and credentials for services in patient records. The Medicaid director found the first issue, objecting to the qualifications of the behavioral health specialist should be removed, which reduced the error rate to 18% and reduced the corresponding overpayment to $53,666.

¶ 8 From this MAC decision, Choices appealed to the CEO of the OHCA, Michael Fogarty. In his decision, Fogarty noted the six matters that still remained at issue were not sufficiently countered to warrant any further modification of the MAC level findings and the $53,666 overpayment remained in place. From the CEO determination, Choices sought appeal of the agency's decision to the district court. 63 O.S.2001 § 5052.

¶ 9 The district court found the agency process did not provide Choices with adequate due process and also found the agency did not act within the time constraints set by the agency regulations. The district court order reversed the OHCA decision, instructed all overpayment funds taken from Choices be refunded and dismissed all proceedings against Choices with prejudice. Having reviewed the record, we reverse the district court order and remand for further proceedings.

¶ 10 Appellants first asserted that no constitutional, statutory or regulatory law requires the OHCA to give Choices a pre-deprivation evidentiary hearing on the basis of an overpayment determination. In this proposition, OHCA argued Choices had no property interest in the overpayments, so that the agency procedure afforded Choices was adequate. Contra to the OHCA's position, Choices argued it held a property interest in the already paid Medicaid funds and OHCA could not deprive Choices of those

funds without a hearing and an opportunity to be heard, in keeping with both the fourteenth amendment of the Constitution and Article 2, section 7 of the Oklahoma Constitution.

¶ 11 Providers who serve the Medicaid program make an application in order to serve as a Medicaid provider. *See* 42 C.F.R. § 455.450. The program is administered according to an interrelated web of state and federal statutes, federal regulations and state agency rules and regulations. *See People v. Kanaan*, 278 Mich.App. 594, 751 N.W.2d 57, 68 (2008); *Bruner v. Timberlane Manor*, 2006 OK 90, ¶ 28 n. 17, 155 P.3d 16, 27 n. 17. On matters of reimbursement for services, providers must either follow the rule or get the rule changed, and if the providers "cannot persuade the Secretary to act—they must vote with their feet." *Long Term Care Pharmacy Alliance, v. Ferguson*, 362 F.3d 50, 59 (1st Cir.2004).

¶ 12 In *Ferguson*, an association of pharmacies challenged the state's emergency rule reducing Medicaid reimbursements for pharmaceuticals. The Michigan court found that based on the U.S. Supreme Court's pronouncement in *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the pharmacies did not have a private right of action under 42 U.S.C. § 1396a(a)(30)(A), if the pharmacies believed the state's reimbursement was inadequate. The court found the pharmacies must accept the reimbursement, act to change the rate or "vote with their feet." *Ferguson*, 362 F.3d at 59.

¶ 13 All providers of medical services operating under the Medicaid program in Oklahoma are required to have an approved provider agreement on file with the OHCA in order to be eligible for Medicaid payments. O.A.C. § 317:30-3-2. Through the agreement, the provider assures it will "compl[y] with all applicable Federal and State regulations." O.A.C. § 317:30-3-2; *Alexander v. Choate*, 469 U.S. 287, 290 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985) (a state is not required to participate in Medicaid, but once a state voluntarily chooses to participate it must comply with statutes and regulations); *See also Pharmcare Oklahoma, Inc. v. State Health Care Auth.*, 2007 OK CIV APP 5, ¶ 12, 152 P.3d 267, 269–70. The SURS audit appeal format and procedure outlined in O.A.C. § 317:2-1-6, 2-1-7 and 2-1-13 is part of the regulatory scheme Choices agreed to comply with when it entered into its provider agreement to perform Medicaid services and seek Medicaid reimbursement. As a result, like the pharmaceutical providers in *Ferguson*, Choices agreed to provide care within the Medicaid program and must operate within the rules or work to change them.

¶ 14 Oklahoma regulations provided an appeal grievance process and procedure for medical care providers, like Choices, who gave care to Medicaid recipients (patients) under the act, were audited and sought to appeal the audit findings of the Surveillance Utilization and Review System (SURS). O.A.C. §§ 317:2-1-6, 2-1-7, and 2-1-13.[1]

---

1. The appeal regulations relating to Choices claims existed in the following form in 2007, when Choices was audited. Although the regulations have been amended since, the language from the 2006 versions (below) of O.A.C. §§ 317:2-1-6, 317:2-1-7, and 317:2-1-13 remain largely unchanged with respect to their application in this case:

317:2-1-6 *Other Grievance procedures and processes:*

Other grievance procedures and processes include those set out in O.A.C. 317:2-1-7 [Surveillance, Utilization and Review System (SURS) and Program Integrity Audits/Reviews Appeals]; O.A.C. 317:2-1-8 (Nursing Home Provider Contract Appeals); O.A.C. 317:2-1-9 [OHCA's Designated Agent's Appeal Process for Behavioral Health Services]; O.A.C. 317:2-1-10 (Drug Rebate Appeal Process); O.A.C. 317:2-1-11 [Medicaid Drug Utilization Review Board (DUR) Appeal Process]; and O.A.C. 317:2-1-12 (For Cause Provider Contract Suspension/Termination Appeals Process).

317:2-1-7 *Surveillance, Utilization and Review System (SURS) and Program Integrity Audits/Reviews appeals:*

SURS and Program Integrity Audits/Reviews appeals are made to the State Medicaid Director.

(1) If a provider disagrees with a decision of the Surveillance, Utilization and Review System Unit (SURS) or Program Integrity Audit/Review which has determined that the provider has received an overpayment, the provider may appeal, within 20 days of the date of that decision to the State Medicaid Director.

(2) The appeal from the SURS or Program Integrity Audit/Review decision will be commenced by the receipt of a letter from the appellant provider. The letter must set out with specificity, the overpayment decision to which the provider ob-

The record reveals the process outlined in § 317 is the process Choices received after it was audited. But Choices argues this regulatory scheme was not sufficient for the deprivation of property rights Choices was subjected to.

¶ 15 Choices complains its rights were violated in multiple ways, such as when Choices and its attorney were not permitted to attend the MAC hearing or allowed to participate at the hearing. Choices complains it was not allowed to make an oral presentation, not allowed to present documentary evidence, not allowed to present witnesses, not allowed to confront or cross-examine witnesses, not allowed to counter other evidence used at hearing, Choices' name was redacted from materials used at the hearing, and Choices claims it was denied a neutral decision-maker.

¶ 16 We find nothing in the regulations that require Choices or its attorney to attend the hearing or make any kind of oral presentation. Choices also claims it was not allowed to present documentary evidence, contra to the provision in § 317:2–1–7(2), but the record indicates otherwise, as numerous documents were presented by Choices after the audit, many of which contributed to the reevaluation of the error rate and reimbursement. We also find nothing in the regulations that requires or gives Choices the right to present, confront or cross-examine witnesses. Witnesses may be called at the discretion of the MAC (§ 317:2–1–7(5)), but no other provisions allowing for witnesses at the demand of a provider appear in the rules.

jects along with the grounds for appeal. The letter should explain in detail, the factual and/or legal basis for disagreement with the allegedly erroneous decision. The letter will also include all relevant exhibits the provider believes necessary to decide the appeal.

(3) Upon the receipt of the appeal by the docket clerk, the matter will be docketed for the next meeting of the MAC. Any appeal received less than four weeks before a scheduled MAC meeting will be set for the following MAC meeting.

(4) The appeal will be forwarded to the SURS unit or Program Integrity Audit/Review unit by the docket clerk for distribution to the members of the subcommittee and for preparation of the OHCA's case. A subcommittee of the MAC will be formed and render a recommendation to the State Medicaid Director.

(5) At the discretion of the MAC, witnesses may be called and information may be solicited from any party by letter, telephonic communication, fax, or other means. The subcommittee may request that members of the Authority be present during their consideration of the appeal. Members of the Authority's Legal Division may be asked to answer legal questions regarding the appeal.

(6) The subcommittee will issue a recommendation regarding the appeal, in writing, within 30 days of the hearing. An exception to the 30 day rule will apply in cases where the subcommittee sets the case over until its next scheduled meeting in order to gather additional evidence. The written recommendation will list the members of the subcommittee who participated in the decision. In cases where an appeal must be continued, the subcommittee will issue a letter within 30 days of the initial hearing to inform the appellant of the continuance.

(7) The recommendation, after being formalized, will be sent to the docket clerk for review by the State Medicaid Director. The State Medicaid Director will issue a decision regarding the appeal within 60 days of the docket clerk's receipt of the recommendation from the MAC. The decision will be issued to the appellant or his/her authorized agent.

(8) If the provider is dissatisfied with the Medicaid Director's decision, it may be appealed to the CEO under O.A.C. 317:2–1–13.

317:2–1–13 *Appeal to the Chief Executive Officer:*

An appeal to the Chief Executive Officer (CEO) of the Oklahoma Health Care Authority includes:

(1) Within 20 days of decisions made pursuant to provider or SURS/Program Integrity Audits/Reviews appeals found at this Chapter, either party may appeal a decision to the CEO of the Authority. Such appeal will be commenced by a letter or fax received by the CEO within 20 days of the receipt of the prior decision made by the ALJ or Medicaid Director. The appeal will concisely and fully explain the reasons for the request. No new evidence may be presented to the CEO. Evidence presented must be confined to the records below.

(2) Appeals to the CEO under recipient proceedings will be commenced by a letter received no later than 10 days of the receipt of the decision by the ALJ. Should the appellant request a transcription to prosecute its appeal to the CEO, the appellant will be required to execute a waiver relieving the OHCA from completing its fair process hearing within 90 days.

(3) For provider and SURS/Program Integrity Audits/Reviews proceedings, the CEO will have 90 days from receipt of the appeal to render a written decision.

(4) For recipient proceedings, the CEO will have 30 days from receipt of the appeal to render a written decision.

(5) The only appeal for proposed administrative sanctions is before the ALJ and the ALJ decision is not appealable to the CEO.

Choices also objects to the redaction of its name from the material used at hearing. Again, we find nothing in the rule prohibiting this practice.

¶ 17 Finally, with regard to a neutral decision maker, Choices appealed to each level within the agency as the regulation provided, the MAC, the State Medicaid director and the CEO of the OHCA. Choices has cited no specific examples of bias by these agency personnel, and has cited no authority entitling Choices access to alternative agency personnel in the course of its appeal.

¶ 18 The appeal procedure to the MAC, § 317:2–1–7(2), allowed Choices to include "all relevant" exhibits Choices believed were necessary to decide the appeal, an opportunity Choices took advantage of by including numerous other documents that were not part of the original audit. Choices also drafted a summary for the MAC of its position with respect to the audit findings. The MAC procedure does not outline a mechanism for the Medicaid provider's in person participation at either the MAC hearing or before the OHCA CEO, so Choices' assertion that it had a right to participate in person is misplaced. O.A.C. §§ 317:2–1–7 and 317:2–1–13. We find no authority in support of this proposition.

¶ 19 With respect to the issue of deprivation of claimed reimbursement funds before the conclusion of all proceedings, the Oklahoma Administrative Code provides:

> When an overpayment has occurred, the provider should immediately refund the Oklahoma Health Care Authority, by check, to the attention of the Finance Division, P.O. Box 18299, Oklahoma City, OK 73154. In refunding OHCA, be sure to clearly identify the account to which the money is to be applied. The MMIS system has the capability of automatic credits and debits. When an erroneous payment occurs, which results in an overpayment,

an automatic recoupment will be made to the provider's account against monies owed to the provider. For more specific information, refer to the Oklahoma Medicaid Provider Billing Manual, Chapter 9: Paid Claim Adjustment Procedures.

O.A.C. 317:30–3–12 (2008).[2] In this case, OHCA asserts no funds were taken from Choices until the finalization of the agency decision. The record indicates recoupment began prior to the district court decision in Choices' favor, and Choices sought a bond under 75 O.S.2001 § 319 to stay enforcement of the reimbursement. Choices has cited no authority requiring OHCA to wait until conclusion of an appeal before implementing the recoupment procedures allowed under § 317:30–3–12, and we have found none. As a result, any claim Choices has made objecting to the premature nature of the reimbursement is unsupported by existing regulation.

¶ 20 Choices Institute argues it was entitled to a different process than that which was provided for in § 317:2–1–7 and 317:2–1–13, and that § 317 is insufficient to protect Choices' property interest in the funds it had already been paid for services it argues were properly rendered. The district court's objective in examining the procedure followed by the OHCA, SURS and MAC was to determine if the regulations were complied with, not to reconfigure or rework the regulations into something more fair and comprehensive for the medical care provider. As in *Ferguson*, 362 F.3d at 59, if the provider wishes to object to the fairness of the Medicaid rule, whether that rule relates to reimbursement rates as it did in *Ferguson* or whether the rule relates to the recourse a provider has available to it after facing an audit, the provider must persuade those with authority to write and approve the regulations to change them or "vote with [its] feet." As a result, the district court's determination that

---

**2.** O.A.C. § 317:30–3–12 (2006). Credits and adjustments:

> When an overpayment has occurred, the provider should immediately refund the Authority, by check, to the attention of the Finance Division, P.O. Box 18299, Oklahoma City, OK 73154. In refunding OHCA, be sure to clearly identify the account to which the money is to

> be applied. The MMIS system has the capability of automatic credits and debits. When an erroneous payment occurs, which results in an overpayment, an automatic recoupment will be made to the provider's account against monies owed to the provider. For more specific information, refer to Subchapter 7, Billing and Inquiries, of this Chapter for adjustments.

Choices' due process rights were infringed upon is reversed.

¶ 21 This court's decision regarding the adequacy of the process accorded Choices is not to be construed as a determination that the CEO's April 30, 2009 decision to uphold the Medicaid director's error rate and reimbursement assessment was supported by the record or not. The district court did not make a determination as to the adequacy or inadequacy of the evidence in support of the agency's findings, instead reversing the agency's decision before making such a determination. Whether the agency record supports the audit findings is something the court will have to determine upon remand, as this court will not address the matter for the first time on appeal. *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 15 n. 17, 976 P.2d 1056, 1062 n. 17.

¶ 22 In addition to the district court finding Choices' due process rights were violated, the order stated "The Appellants rights were also violated by Appellees failure to follow the mandatory time periods in the appeal process." Section 317:2–1–7 states the MAC subcommittee will issue a recommendation regarding the appeal within 30 days of the hearing and the State Medicaid Director will issue a decision regarding the appeal within 60 days of the docket clerk's receipt of the recommendation from the MAC. In this case the Medicaid director issued her decision on March 31, 2009, after the hearing on September 18, 2008, in excess of the time provided for in the regulation.

¶ 23 It is unclear how much of the district court's order to reverse the agency decision rested on the due process analysis and how much rested on the MAC's failure to observe the time parameters in § 317:2–1–7. The regulation is silent as to what penalty should occur if the MAC does not meet the 30 or 60 day deadline. This court will not assume the penalty for failure to meet the deadline is dismissal based upon this silence. Further, Choices cites no example of the harm or prejudice inflicted upon it as a result of the delay, and delay alone is not ordinarily a reason to dismiss an action. *Boston v. Buchanan,* 2003 OK 114, ¶ 36, 89 P.3d 1034, 1044–45. As a result, to whatever extent the court based its decision on the MAC's failure to meet its decision deadline, we reverse the district court.

¶ 24 The order of the district court is REVERSED and this cause REMANDED for further proceedings.

BUETTNER, P.J., and BELL, J., concur.