AL-KHOURI v. OKLAHOMA HEALTH CARE AUTHORITY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:AL-KHOURI v. OKLAHOMA HEALTH CARE AUTHORITY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 AL-KHOURI v. OKLAHOMA HEALTH CARE AUTHORITY
2018 OK CIV APP 10
419 P.3d 366
Case Number: 115769
Decided: 09/29/2017
Mandate Issued: 02/23/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 10, 419 P.3d 366

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT.  

HAISAM AL-KHOURI, M.D., Plaintiff/Appellee,
v.
OKLAHOMA HEALTH CARE AUTHORITY, and JOEL N. GOMEZ, in his capacity as Administrator of the Oklahoma Health Care Authority, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, JUDGE

TEMPORARY INJUNCTION VACATED
CASE IS REVERSED AND REMANDED

Danny K. Shadid, RIGGS, ABNEY, NEAL, TURPEN ORBISON & LEWIS, Oklahoma City, Oklahoma, for Plaintiff/Appellee,

Nicole M. Nantois, Joseph H. Young, Rebecca I. Burton, OKLAHOMA HEALTH CARE AUTHORITY, Oklahoma City, Oklahoma, for Defendants/Appellants.

Kenneth L. Buettner, Chief Judge:

¶1 Defendants/Appellants Oklahoma Health Care Authority and Joel N. Gomez,[1] in his capacity as Administrator of the Oklahoma Health Care Authority, (collectively, the OHCA) appeal from an order granting a temporary injunction prohibiting the OHCA from terminating Plaintiff/Appellee Haisam Al-Khouri, M.D.'s contract to provide health care services to SoonerCare (Medicaid) members. Dr. Al-Khouri sought declaratory relief that the administrative process for appealing the immediate termination of his SoonerCare provider agreement violated due process and injunctive relief prohibiting the OHCA from terminating his provider agreement. We hold the trial court abused its discretion by granting a temporary injunction. Dr. Al-Khouri does not have a property interest in continued participation in Medicaid programs and, therefore, has failed to demonstrate clear and convincing evidence of his likelihood of success on the merits of his due process claim. The temporary injunction is vacated and this case is reversed and remanded.

¶2 Dr. Al-Khouri is a licensed psychiatrist and has been a Medicaid provider in Oklahoma since 1993. In a letter dated September 23, 2016, the OHCA confirmed Dr. Al-Khouri's SoonerCare General Provider Agreement (Provider Agreement) had been received and updated. On November 29, 2016, the OHCA issued a letter immediately terminating Dr. Al-Khouri's Provider Agreement for multiple contract violations related to the quality of care provided to SoonerCare members, including failure to adhere to applicable professional standards and failure to adhere to the OHCA's patient medical record documentation requirements. The termination letter outlined the reasons for termination and that, based on those reasons, the OHCA was terminating Dr. Al-Khouri's contract immediately to protect the health and safety of its members. Dr. Al-Khouri did not appeal the termination of his contract pursuant to OAC 317: 2-1-12.[2] Rather, on December 16, 2016, Dr. Al-Khouri filed this lawsuit seeking injunctive and declaratory relief. Dr. Al-Khouri claims the recent changes to the OHCA's administrative procedures for reviewing the immediate termination of provider agreements, specifically OAC 317: 2-1-12, violate procedural due process protections afforded under the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution and do not comply with Article II of Oklahoma's Administrative Procedures Act (APA), 75 O.S. §§ 308a-323. Dr. Al-Khouri argues the new rule provides only a "desk review" of the decision but that due process requires a full post-termination evidentiary hearing. The district court issued a temporary restraining order December 19, 2016, prohibiting the OHCA from terminating Dr. Al-Khouri's contract and temporarily reinstating him as a SoonerCare provider. The trial court held an evidentiary hearing December 28, 2016, took the matter under advisement, and extended the restraining order. On January 27, 2017, the trial court found the procedures provided in OAC 317: 2-1-12(2) violated due process and granted Dr. Al-Khouri's application for a temporary injunction. The trial court also found the OHCA was subject to Article II of the APA and that Dr. Al-Khouri was entitled to minimum due process, including a full post-termination evidentiary hearing. The OHCA appeals.[3]

¶3 Matters involving the grant or denial of injunctive relief are of equitable concern. Dowell v. Pletcher, 2013 OK 50, ¶ 5, 304 P.3d 457. A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. Id. This Court will consider all the evidence on appeal to determine whether the trial court's grant of a temporary injunction was an abuse of discretion. See id.

¶4 The grounds for issuing a temporary injunction are: (1) the likelihood of success on the merits, (2) irreparable harm to the party seeking injunctive relief if relief is denied, (3) relative effect on the other interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. See Daffin v. State of Okla. ex rel., Okla. Dep't of Mines, 2011 OK 22, ¶ 7, 251 P.3d 741. The need for an injunction must be shown by clear and convincing evidence, and the nature of the injury must not be speculative in nature. Id.

¶5 The OHCA contends Dr. Al-Khouri failed to prove by clear and convincing evidence his likelihood of success on the merits of his due process claim and, therefore, a temporary injunction was unwarranted. "[A] procedural due process challenge first requires the existence of either a fundamental right or a constitutionally protected 'property or liberty' interest." Ross v. Peters, 1993 OK 8, ¶ 24, 846 P.2d 1107; see Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569-71 (1972); The OHCA argues Dr. Al-Khouri does not have a protected property interest in continued participation in Medicaid programs and, therefore, he is not entitled to due process.

¶6 In his appellate brief, Dr. Al-Khouri does not respond to or cite any authority rebutting the OHCA's primary argument that he did not have a protected property interest and, therefore, did not demonstrate a likelihood of success on the merits. However, in his Petition, Dr. Al-Khouri claims that, based on the terms of the Provider Agreement and his long-time participation as a Medicaid provider, he had a reasonable expectation of continued participation in Oklahoma's Medicaid programs. Dr. Al-Khouri asserts that this reasonable expectation of continued participation in the Medicaid programs constitutes a protected property interest, thereby implicating due process. While the trial court in this case found OAC 317: 2-1-12 violates due process, it did not make specific findings of fact as to whether Dr. Al-Khouri had a protected property or liberty interest or as to his likelihood of success on the merits of his due process claim.[4] Whether a provider has a property interest in continued participation in Medicaid programs is an issue of first impression in Oklahoma.

¶7 Procedural due process applies only to property and liberty interests protected by state or federal constitutions.[5] See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-71 (1972). To determine whether due process requirements apply, we must look to the nature of the interest at stake. See id. at 570-71.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

. . .

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. at 577. A protected property interest must be based on an independent source such as a law, rule, or mutually explicit understanding. See Koerpel v. Heckler, 797 F.2d 858, 864 (10th Cir. 1986). Dr. Al-Khouri has not identified any state statute or regulation creating such a property interest. Rather, he points to the terms of the Provider Agreement and his long-time participation in the Medicaid program as the sources of his property interest. Dr. Al-Khouri claims these amount to a mutually explicit understanding of his continued participation in Medicaid programs.

¶8 The terms for terminating the Provider Agreement are:

ARTICLE VIII. TERMINATION

8.1 This Agreement may be terminated by three methods: (I) Either party may terminate the Agreement for cause with a thirty-day written notice to the other party; (ii) either party may terminate the agreement without cause with a sixty-day written notice to the other party; or (iii) OHCA may terminate the Agreement immediately (a) to protect the health and safety of Members, (b) upon evidence of fraud, (c) pursuant to Paragraph 4.1(e) above.

Section 9.2 of the Provider Agreement provides that "OHCA does not guarantee PROVIDER will receive any patients, and PROVIDER does not obtain any property right or interest in any SoonerCare Member business by this Agreement." The Provider Agreement states that it expires on the date indicated in the Special Provisions for the provider type. The Special Provisions for Physician states the agreement expires September 30, 2020. However, the letter from the OHCA accepting Dr. Al-Khouri's Provider Agreement indicates it expires December 30, 2016. The Provider Agreement also provides the parties will be bound by the state Medicaid statutes and rules and any changes to them during the term of the Provider Agreement.

¶9 The mutually explicit understanding created by the terms of the Provider Agreement was that Dr. Al-Khouri's Provider Agreement could be terminated by the OHCA at any time in order to protect the health and safety of SoonerCare members. While Dr. Al-Khouri may have held an expectation that he would be a Medicaid provider until December 30, 2016 or even September 30, 2020, the terms of the contract do not guarantee that. Furthermore, the provider agreement explicitly disavows any property interest in SoonerCare business. The terms of the Provider Agreement retain for the state significant discretionary authority over the bestowal or continuation of a government benefit, i.e. participation as a provider in Medicaid programs. This suggests Dr. Al-Khouri is not entitled to the benefit. We hold that the terms of the Provider Agreement do not give Dr. Al-Khouri a protected property interest in continued participation in Medicaid programs.

¶10 Our holding is consistent with the decisions of the majority of courts in other jurisdictions. While no other court has analyzed the precise terms of the Provider Agreement in this case, several federal circuit courts have found that providers do not have a property interest in continued participation in federal health care programs. See Erickson v. U.S., ex rel., Dep't of Health & Human Servs., 67 F.3d 858, 862 (9th Cir. 1995) (holding medical providers do not have a property interest in continued participation in Medicare); Senape v. Constantino, 936 F.2d 687, 689-91 (2d Cir. 1991) (holding providers have no property right to continued enrollment as a qualified Medicaid provider); Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 581-82 (2d Cir. 1989) (suggesting the rights reserved by the state with regard to Medicaid providers, including laws permitting the state agency to terminate the provider's participation upon 30 days' notice without cause and permitting the state agency to take immediate action to suspend or terminate a provider's participation under certain circumstances "casts doubt on whether the provider's interest in continuing as a provider, either indefinitely or for any period without interruption, is a property right that is protected by due process"); Koerpel v. Heckler, 797 F.2d 858, 863-65 (10th Cir. 1986) (holding the provider did not demonstrate any laws, rules, or mutually explicit understandings that secured a property interest in his continuing eligibility for Medicare reimbursement); Geriatrics, Inc. v. Harris, 640 F.2d 262, 264-65 (10th Cir. 1981) (holding a nursing home did not have a property interest in the renewal of its Medicaid and Medicare provider agreements); Cervoni v. Sec'y of Health, Educ. & Welfare, 581 F.2d 1010, 1018-19 (1st Cir. 1978) (holding that the mere fact a provider was paid under Medicare Part B did not create a valid expectation that he could continue to be reimbursed under Part B); but see Ram v. Heckler, 792 F.2d 444, 447 (4th Cir. 1986) (holding, without discussion, that the provider's expectation of continued participation in the medicare program is a property interest protected by the due process clause); Bowens v. N.C. Dep't of Human Res., 710 F.2d 1015, 1017-18 (4th Cir. 1983) (holding state regulations that did not authorize termination of a provider without cause created a property interest in continued participation in program entitling him to be terminated only for cause); Hathaway v. Mathews, 546 F.2d 227, 230 (7th Cir. 1976) (holding nursing home's expectation of continuing to receive Medicaid payments on behalf of residents is a protected property right under the due process clause). Courts have reasoned that health care providers are not the intended beneficiaries of the federal health care programs and, as such, they do not have a property interest in continued participation or reimbursement. See Koerpel, 797 F.2d at 864; Cervoni, 581 F.2d at 1018.

¶11 Dr. Al-Khouri asserts that termination of the Provider Agreement would be devastating to his practice. Seventy percent of his patients are SoonerCare members. Dr. Al-Khouri's license to practice medicine is not being revoked and, although he is likely to suffer financial losses, the financial losses are not controlling. See Koerpel, 797 F.2d at 864; Geriatrics, Inc. v. Harris, 640 F.2d 262, 265. Dr. Al-Khouri's financial losses do not advance to the level of a protected property right because no clear promises have been made by the government. See Koerpel, 797 F.2d at 864. The financial impact on Dr. Al-Khouri's practice by not being able to treat Medicaid patients is not of constitutional significance for the establishment of a protected property interest. Id.; Geriatrics, 640 F.2d at 265. He may still operate and render care to private-pay patients. See Geriatrics, 640 F.2d at 265.

¶12 Dr. Al-Khouri also argues his patients will suffer if his Provider Agreement is terminated. He claims it takes 2-3 months to reroute a SoonerCare patient from one provider to another. However, the indirect adverse effect on Dr. Al-Khouri's patients does not create a constitutional right. Id. at 264. Terminating his contract is not an agency action depriving SoonerCare members of their direct benefits. Id.

¶13 Whether Dr. Al-Khouri was deprived of a protected liberty interest was not emphasized in the parties' arguments before the trial court or even mentioned on appeal. A person or entity may have a liberty interest if its good name, reputation, honor, or integrity is at stake because of what the government is doing to him. See Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971); Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 177 (2d Cir. 1991). After Dr. Al-Khouri's Provider Agreement was terminated, the OHCA sent letters to his patients notifying them that Dr. Al-Khouri was no longer a SoonerCare provider. We hold the letter is not sufficiently stigmatizing to amount to a deprivation of a liberty interest.

¶14 Without a protected property or liberty interest, due process is not implicated. Our review of the trial court's decision to grant a temporary injunction, at a minimum, raises serious doubt as to the existence of a protected property interest. Dr. Al-Khouri has failed to present clear and convincing evidence of his likelihood of success on the merits of his due process claim. Our inquiry into the grounds for issuing a temporary injunction need not go any further. We hold the trial court abused its discretion by granting a temporary injunction.

¶15 OAC 317: 2-1-12 is part of the regulatory scheme with which Dr. Al-Khouri agreed to comply when he entered into the Provider Agreement. As a result, Dr. Al-Khouri must operate within the rules or work to change them. See Choices Inst., Inc. v. Okla. Health Care Auth., 2013 OK CIV APP 71, ¶ 13, 308 P.3d 177.[6] If a provider wishes to object to the fairness of a Medicaid rule, whether that rule relates to reimbursement rates or the recourse a provider has available to it after facing an audit, the provider must persuade those with authority to write and approve the regulations to change them. See id. ¶ 20. The same holds true if a provider objects to rules governing the process for appealing the termination of a provider agreement.

¶16 The OHCA also argues the trial court erred as a matter of law by finding Article II of the APA applies to the OHCA. Issues of statutory construction are questions of law to be reviewed de novo, and appellate courts exercise plenary, independent, and non-deferential authority. Welch v. Crow, 2009 OK 20, ¶ 10, 206 P.3d 599. In cases requiring statutory construction, the cardinal rule is to ascertain and give effect to the intent of the Legislature. Id. The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole. Naylor v. Petuskey, 1992 OK 88, ¶ 4, 834 P.2d 439.

¶17 The Oklahoma Health Care Authority Act includes the following definitions:

1. "Administrator" means the chief executive officer of the Authority;

2. "Authority" means the Oklahoma Health Care Authority;

3. "Board" means the Oklahoma Health Care Authority Board;

63 O.S.2011 § 5005(1)-(3). Section 5006 establishes the Oklahoma Health Care Authority, i.e. the state agency. 63 O.S.2011 § 5006(A). Section 5007 establishes the Oklahoma Health Care Authority Board and describes its powers and duties. See 63 O.S.2011 § 5007(F). Subsection (H) provides that "[t]he Board and the Authority shall act in accordance with the provisions of the Oklahoma Open Meeting Act, the Oklahoma Open Records Act and the Administrative Procedures Act." Id. § 5007(H). Section 5008 describes the Administrator's powers and duties and provides that "[t]he Administrator of the Oklahoma Health Care Authority shall be the chief executive officer of the Authority and shall act for the Authority in all matters except as may be otherwise provided by law." 63 O.S.2011 § 5008(B).

¶18 The APA specifies which agencies or classes of agency activities are not required to comply with Article II of the APA. According to § 250.4 of the APA, "[t]he Oklahoma Health Care Authority Board and the Administrator of the Oklahoma Health Care Authority" are exempt from Article II of the APA. 75 O.S.Supp. 2014 § 250.4(B)(19) (emphasis added). The trial court found this provision does not exempt the Oklahoma Health Care Authority, the agency itself, from the APA. On appeal, the OHCA argues the plain meaning of the language in § 250.4(B)(19) is that the exemption applies to the agency as a whole. Dr. Al-Khouri argues that 63 O.S. § 5005 identifies and defines three separate persons and/or entities: the Authority, the Administrator, and the Board. See 63 O.S. § 5005(1)-(3). Dr. Al-Khouri contends the plain language of § 5007(H) requires that the Board and the Authority comply with Article II of the APA, and the Authority is not among the agencies listed as exempt in § 250.4(B). Only the Board and the Administrator are listed as exempt. See id. § 250.4(B)(19). Therefore, Dr. Al-Khouri contends, the Authority must comply with Article II of the APA.

¶19 We agree with the OHCA that, pursuant to 75 O.S. § 250.4(B)(19), the Authority is exempt from Article II of the APA. The Authority and its powers and duties cannot be separated from those of the Administrator and the Board. Oklahoma law provides that the Administrator "shall act for the Authority." 63 O.S. § 5008(B). The Board also acts on behalf of the Authority, as outlined in § 5007(F). The Authority is an entity and cannot act without the Administrator or Board. Section 5007(H) does not override the specific exemption in 75 O.S. § 250.4(B)(19). It is a rule of statutory construction that the most recent statute will be given effect over a conflicting prior statute when there is a conflict between the two statutes. See Shepard v. Okla. Dep't of Corrs., 2015 OK 8, ¶ 17, 345 P.3d 377. Section 250.4(B)(19) was enacted two years after § 5007(H). Our conclusion that the § 250.4(B)(19) exemption includes the agency itself is supported by the fact the Legislature has specifically folded the APA back into some OHCA proceedings. See 63 O.S.2011 § 5030.3(B) ("Any party aggrieved by a decision of the Oklahoma Health Care Authority Board or the Administrator of the Oklahoma Health Care Authority, pursuant to a recommendation of the Medicaid Drug Utilization Review Board, shall be entitled to an administrative hearing before the Oklahoma Health Care Authority Board pursuant to the provisions of the Administrative Procedures Act."); 63 O.S.2011 § 5052(D) ("Any applicant or recipient under this title who is aggrieved by a decision of the Administrator rendered pursuant to this section may petition the district court in which the applicant or recipient resides for a judicial review of the decision pursuant to the provisions of Sections 318 through 323 of Title 75 of the Oklahoma Statutes."). Furthermore, a 2001 Attorney General opinion noted 75 O.S. § 250.4(B)(19) exempts the OHCA from the hearing requirements set forth in Article II of the APA. See 2001 OK AG 15, ¶ 3, n.2.

¶20 We hold Dr. Al-Khouri has failed to present clear and convincing evidence of likelihood of success on the merits of his due process claim and that Article II of the APA does not apply to these proceedings. The order granting a temporary injunction is vacated. This case is reversed and remanded.

¶21 TEMPORARY ORDER VACATED; REVERSED AND REMANDED.

MITCHELL, P.J. and BELL, J. (sitting by designation), concur.

FOOTNOTES

[1] Rebecca Pasternik-Ikard was actually the Administrator and CEO of the Oklahoma Health Care Authority.

[2] The applicable section of the Oklahoma Administrative Code that explains the appeals process for providers whose SoonerCare contracts are immediately terminated for cause provides, in pertinent part:

(2) Immediate termination. The OHCA will provide
notice to the provider of the termination of the provider's contract. The written notice of termination will state:

(A) the reasons for the proposed termination;

(B) the date upon which the termination will be effective; and

(C) a statement that the provider has a right to
appeal the termination of the provider's contract in
a post-termination panel committee desk review
within 20 days of the date of the termination letter.

(3) Post-termination panel committee desk review.

After the effective date of the termination of the provider's contract, the provider is entitled to receive a post-termination panel committee desk review. The panel review committee for the OHCA will be comprised of three (3) employees of the OHCA as designated by the Chief Executive Officer or his/her designee. Any OHCA employee who was involved with the underlying investigation of the provider's case for purpose of the termination will not be a panel review committee member. The purpose and scope of the panel committee desk review will be limited to issues raised in the OHCA's letter of termination as the basis of terminating the provider's contract. The panel committee does not have jurisdiction to hear issues not addressed in the termination notice.

(A) The provider must request a panel committee
desk review within 20 days of the date of the
termination letter. The provider must submit a brief
written statement detailing the facts which are
refuted by the provider. Any documentation the
provider requests consideration of by the panel
review committee must also be submitted with the
written statement.

(B) The OHCA may submit any additional
documents to the panel committee for the desk
review that may contradict the documents submitted
by the provider for the purposes of the desk review.
Any additional information that OHCA submits to
the panel review committee will also be provided to
the provider.

(C) The panel review committee will issue a
written decision regarding the provider's contract
termination approximately 60 days from receipt of
the provider's written statement and documentation.

OAC 317: 2-1-12(2)-(3) (Amended at 33 Ok Reg 788, eff. Sept. 1, 2016).

[3] An order granting a temporary injunction is an interlocutory order appealable by right. See 12 O.S.Supp.2013 § 993(A)(2); Okla.Sup.Ct.R. 1.60(c). The trial court modified its order February 23, 2017, but the OHCA's propositions of error remain the same.

[4] The trial court bypassed the first critical consideration for granting a temporary injunction but did make findings of fact as to the other elements: irreparable harm, the effect on other interested parties, and public policy concerns.

[5] The United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, § 1. The Oklahoma Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. art. II, § 7.

[6] Both parties discuss Choices Inst., Inc. v. Okla. Health Care Auth., 2013 OK CIV APP 71, 308 P.3d 177, in their briefs. In Choices, the OHCA sought reimbursement of overpayments made to a provider. See id. ¶ 4. The Court of Civil Appeals did not make a specific determination as to whether the provider had a property interest in Medicaid funds already paid to it, thereby implicating due process. Ultimately, the appellate court determined the process for reviewing audit findings did not infringe upon the provider's due process rights. Id. ¶ 20. The Choices decision does not look at the threshold issue in this case: whether the Provider Agreement gives a provider a protected property interest in his continued participation in Medicaid programs.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 2001 OK AG 15, Question Submitted by: The Honorable Opio Toure, State Representative, District 99
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2013 OK CIV APP 71, 308 P.3d 177, CHOICES INSTITUTE, INC. v. OKLAHOMA HEALTH CARE AUTHORITY
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 88, 834 P.2d 439, 63 OBJ 1834, Naylor v. Petuskey
Discussed
 1993 OK 8, 846 P.2d 1107, 64 OBJ 440, Ross v. Peters
Discussed
 2009 OK 20, 206 P.3d 599, WELCH v. CROW
Discussed
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed
 2013 OK 50, 304 P.3d 457, DOWELL v. PLETCHER
Discussed
 2015 OK 8, 345 P.3d 377, SHEPARD v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 993, Appeals from Certain Interlocutory Orders - Undertaking
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 5005, Definitions
Discussed at Length
 63 O.S. 5006, Creation of Oklahoma Health Care Authority - Powers and Duties
Cited
 63 O.S. 5007, Creation of Oklahoma Health Care Authority Board - Members - Powers and Duties
Cited
 63 O.S. 5008, Administrator of Oklahoma Health Care Authority - Advisory Committees
Discussed
 63 O.S. 5052, Opportunity for Hearing
Cited
 63 O.S. 5030.3, Powers and Duties of Board
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250.4, Compliance with Act - Exceptions
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA